BELDING. (UNITED STATES v.) See Case No. 14,562.

BELEW. (UNITED STATES v.) See Case No. 14,563.

## Case No. 1,244.

### The BELKNAP.

[2 Lowell, 281.] [1]

District Court, D. Massachusetts. Oct. Term, 1873.

#### COLLISION—TUG AND TOW.

1. A ship, manned with landsmen only, was to be moved to another part of the harbor, and,

[1] [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]

when coming out of her dock in tow of a steam-tug, collided with a lighter which was made fast to another ship in the same dock. *Held*, the tug was prima facie liable.

[Cited in The Frank Moffat, Case No. 5,060.]

2. Some cases concerning the respective liabilities of tow and tug considered.

[Cited in The Doris Eckhoff, 32 Fed. 559.]

3. Whether the tug would be liable if the fault were shown to be with the master of the ship, quaere?

[In admiralty. Libel by the owner of a ballast lighter against the steam-tug Belknap for collision. Decree for libellant.]

The libellant was owner of a small ballast lighter, which was made fast alongside the ship Archer in the dock of a wharf in Boston, on the 23d February, 1873, when the steam-tug Belknap came into the dock to tow the ship Nonantum, which was lying on the opposite side from the Archer and a little higher up the dock, round to a dry dock for repairs. There was not room to pass if the tug should be lashed alongside the Nonantum, and she gave a line to the latter; and the libellant's evidence tended to show that she began to tow, and was hailed not to come into the lighter, and that her master, or some one on board of her, answered that there was room enough. The Nonantum soon after struck the lighter, and damaged her to some slight extent. The respondent denied that the tug was towing the Nonantum. Her master testified that he had not begun to haul taut. His opinion of the cause of the accident was, that the lines of the Nonantum were let go, and she fell over on the lighter, or that she drifted with the wind, which was blowing down the dock.

C. G. Thomas, for libellant.
J. B. Richardson, for claimant.

LOWELL, District Judge. I wish to repeat that these cases should be brought on as speedily as possible, while the witnesses are at hand, and the matter is fresh in their minds. The court will always, as heretofore, make every effort to find time for speedy trials of admiralty causes. In this case we have lost the testimony of the master of the Nonantum, which would have been of most material assistance in settling the difficult question of fact involved in the issue. There is no doubt that either the ship Nonantum or the tug, or both, are responsible for this damage; for the lighter was lawfully in the dock, and was made fast there. If, indeed, it had been proved, as was alleged, that the libellant had failed to give place after due and ample notice, the case might be different. The only point argued was, whether the fault was with the ship or the tug. The master of the Nonantum was on board his ship; but there is no evidence that he was in command of her navigation, unless that is to be presumed. There was also a Mr. Murphy, and five or six men who had been engaged the day before to move or as-

sist in moving the ship, which had no crew on board. Murphy and his assistants are landsmen, and call themselves ship-movers, or ship-haulers; but whether Murphy, or the master of the tug, or the master of the ship, had the command and charge of the whole business of moving the ship, is what the parties do not agree upon, and what is somewhat difficult to ascertain upon the evidence.

It was argued that the law has been laid down too broadly against tugs in this district, in The R. B. Forbes, [Case No. 11,598,] and The Rescue, [Id. 11,708.] In the latter case, it was held that an action in rem would lie against the steamer which furnished the motive power, although the tow had on board a pilot, who directed the motion of both ship and steamboat. This certainly seems an extreme application of the doctrine that the thing which does the damage is always responsible. It is the law in admiralty, generally speaking, that recovery may be had in rem against a vessel that is improperly navigated and thereby injures another vessel, without regard to the ownership, or possessory or any other title, of the wrong-doing vessel, or any inquiry as to what persons would be responsible in a personal action. A lien is fastened on the thing; and its owner and charterer, master and pilot, and all others interested, must settle their responsibilities between themselves. When two ships, independently owned, but connected in a joint enterprise as tug and tow, have injured a third ship, the question of responsibility may be more difficult, and the authorities seem to be somewhat contradictory. I believe it is true, as argued, that no other case has gone so far as The Rescue, [supra;] but whether that case was well decided or not I shall not need to consider.

In England, the rule is, that the ship is liable for all faults in her own equipment and management, or in those of the tug, on the simple principle of "respondeat superior;" because the ship hires the tug: The Kingston-by-Sea, 3 W. Rob. Adm. 152; The Cleadon, 14 Moore, P. C. 92. If the tug has committed any fault, her owners are to answer over to the ship-owners, (The Nightwatch, Lush. 542;) but the latter assume full responsibility towards third persons, as they do for the conduct of their own officers and crew. Besides this, it is taken to be the fact in most of the English cases, that the navigation is under the charge of the ship's pilot. "To say," said Dr. Lushington, in a case of this character, "that the steamer had the whole charge of the Ticonderoga, is comtrary to all common sense." The Ticonderoga, Swab. 215, 217. If the ship have a licensed pilot, whose orders are obeyed by the tug, the fact, according to an exceptional law in England, exonerates both ship and tug: The Duke of Sussex, 1 W. Rob. Adm. 270. But if the pilot be not in command, or his commands are disobeyed, the ship is liable, for the reason already given: The Borussia, Swab. 94. See The Chieftain, 2 W. Rob. Adm. 450; The Gypsey King, Id. 537. As the ship is responsible in every case in which the plaintiff can recover at all, and as there might be doubt about holding the tug under some circumstances, very few cases are brought against tugs.

The simple rule of the English law is not capable of application in this country. In the first place, the usual course of business here is for the tug-boat to take the actual charge of the navigation, and whatever faults are committed are usually by her officers or crew. Besides this, a very considerable part of the towing is done on the great rivers, such as the Hudson and the Mississippi, where the tow often consists of many vessels belonging to different owners. In some of the reported cases there have been thirty or more barges or canal-boats in tow of a single steamer, and, of course, it cannot be that they are all principals. This difference of trade has brought about a different mode of regarding the responsibility of the parties.

In an early case the supreme court of Massachusetts held that the owners of the tow did not stand in the relation of principals to the master and crew of the tug: Sproul v. Hemmingway, 14 Pick 1. It is not easy to see how this conclusion can be avoided at common law, under the rule, now fully established, that the person who merely bargains for certain work to be done for him by a person who supplies the men and materials, and has the whole charge of the operation, is not responsible for the acts or neglects of the contractor or his servants. I do not need to decide whether this rule would hold good in the admiralty, or whether the English rule might not be sound in a case like those in which it has been adopted.

It has come to be the general practice in this country to consider the tug responsible, unless it can be proved that the actual fault was in the navigation of the tow. It is to be regretted, perhaps, that there should not be, if there is not, one simple rule holding one or the other in all cases. It appears to be the opinion of Judge Sprague that the law is so; and I do not now decide that question. The general course, however, having been to endeavor to prove which of the parties engaged in the joint enterprise is, as between themselves, in fault, the decisions in this country have not been entirely uniform, and the practice has grown up in some districts of suing both tug and tow, so as to risk nothing but costs, if only one of them should prove to be responsible. The cases cited below will show that in the third circuit they still adhere to the English doctrine, that the ship is the principal; while in the others and in the supreme court the tug is presumed to be the principal, and is to be held responsible for a fault on that side of the case, in the absence of evidence that the tow caused the damage: The Creole, [Case No. 13,033;] The Sampson, [Id.

12,280;] Sproul v. Hemmingway, 14 Pick. 1; The New York v. Rea, 18 How. [59 U. S.] 223; The Express, [Case No. 4,596;] The John Fraser, 21 How. [62 U. S.] 184; The Hector, [Case No. 6,317,] sub nom. Sturgis v. Boyer, 24 How. [65 U. S.] 110; The R. B. Forbes, [Cases Nos. 11,598, and 11,275;] The Clover, [1d. 2,908.] The law of this country is summed up by Clifford, J., in The Mabey and Cooper, 14 Wall. [81 U. S.] 204.

In only one of these cases was it decided that the ship would not be liable as well as the tug; and it may not yet, perhaps, be too late to establish a general rule, if it should be found the most just and reasonable. In the mean time, it must be admitted to be the law of the United States, founded on what I suppose to be a true assumption of fact, that when a vessel is in tow of a tug and runs into another vessel which is in no fault, prima facie the tug is responsible, whether the tow be so or not. I am prepared to admit, for the purposes of this case, that the tug would be exonerated, if it were shown that the master of the ship or her crew were alone in fault. I do not decide so, but take it for granted in this case. Now, what is the evidence here? The plaintiff's testimony puts it, by three witnesses, that the tug was seen apparently towing the ship towards the lighter, and was hailed, and some one replied that there was room enough. Here is, certainly, a prima facie case. On the other hand, the master of the tug denies the hail, and the reply, and the towing. He puts forward the very improbable theory that the vessel was to be allowed to drift down past the other ships in the dock; improbable, because no means were taken to warp her. This evidence leaves no one in command. It is not likely that the riggers and other landsmen were to do any thing more than tend the lines, and do work of that sort for a vessel moved from one part of the harbor to another. In the case above cited from 24 How. (65 U. S.) the circumstances were very similar, and there not only was the tug held, but the ship was acquitted. Upon the whole evidence, I do not think the claimants have overcome the plaintiff's case, and disproved the apparent responsible agency of the tug in this business. Decree for the libellant.